O’Donnell, J.,
dissenting.
{¶ 45} Respectfully, I dissent.
{¶ 46} In my view, the Ohio Constitution mandates that in cases in which the death penalty has been imposed, the Supreme Court has appellate jurisdiction only over a direct appeal from the judgment imposing the sentence of death. And, because the Ohio Constitution vests jurisdiction in courts of appeals to review the final judgments of courts inferior to a court of appeals, the General Assembly does not have authority to grant that jurisdiction to this court to review a direct appeal from a trial court’s denial of postconvietion DNA testing sought by an offender who has been sentenced to death. Thus, R.C. 2953.73(E), which purports to grant authority to this court to review a direct appeal from the denial of postconviction DNA testing, is unconstitutional.
{¶ 47} As we recently indicated in State v. Davis, 131 Ohio St.3d 1, 2011-Ohio-5028, 959 N.E.2d 516, ¶ 15, Article IV, Section 2(B)(2)(c) of the Ohio Constitution “limits the jurisdiction of the Supreme Court to the appeal of a judgment sentencing a defendant to death.” Because the legislature lacks authority to enlarge or modify that jurisdiction through a statute that provides for direct appeals to this court from postconviction judgments in death-penalty cases, I am unable to join the majority in today’s holding, which expands the jurisdiction of this court.
Appeals of Judgments Imposing the Death Penalty
{¶ 48} In 1994, Ohio voters approved an amendment to the Ohio Constitution that eliminated the two-tiered review of judgments imposing the death penalty that previously afforded direct appeals as of right first to the court of appeals and then to this court. State v. Smith, 80 Ohio St.3d 89, 95, 684 N.E.2d 668 (1997).
{¶49} The amendment modified Article IV, Section 2(B)(2)(c) of the Ohio Constitution, which now provides: “The supreme court shall have appellate jurisdiction as follows: * * * In direct appeals from the courts of common pleas *177 or other courts of record inferior to the court of appeals as a matter of right in cases in which the death penalty has been imposed.” (Emphasis added.)
{¶ 50} In Davis, we rejected the argument that “every judgment in a case in which the death penalty was imposed must be appealed directly to the Supreme Court of Ohio.” 131 Ohio St.3d 1, 2011-Ohio-5028, 959 N.E.2d 516, at ¶ 18. We explained that such a holding “would be contrary to the language of the constitutional amendments and the statute and would have the effect of delaying the review of future cases, a scenario that the voters expressly rejected in passing the constitutional amendments.” Id. at ¶ 22.
{¶ 51} Thus, recognizing that the Ohio Constitution “limits the jurisdiction of the Supreme Court to the appeal of a judgment sentencing a defendant to death,” id. at ¶ 15, we held that the courts of appeals retain jurisdiction to “entertain all appeals from the denial of postjudgment motions in which the death penalty was previously imposed,” id. at ¶ 22.
Postconviction DNA Testing
{¶ 52} R.C. 2953.71 et seq. authorize eligible offenders to apply for postconviction DNA testing, and R.C. 2953.73(D) sets out the process by which common pleas courts are to determine whether an application should be accepted.
{¶ 53} At issue here is R.C. 2953.73(E), which purports to vest this court with exclusive appellate jurisdiction to review the denial of postconviction DNA testing:
A judgment and order of a court entered under division (D) of this section is appealable only as provided in this division. If an eligible offender submits an application for DNA testing under section 2953.73 of the Revised Code and the court of common pleas rejects the application under division (D) of this section, one of the following applies:
(1) If the offender was sentenced to death for the offense for which the offender claims to be an eligible offender and is requesting DNA testing, the offender may seek leave of the Supreme Court to appeal the rejection to the Supreme Court. Courts of appeals do not have jurisdiction to review any rejection if the offender was sentenced to death for the offense for which the offender claims to be an eligible offender and is requesting DNA testing.
(2) If the offender was not sentenced to death for the offense for which the offender claims to be an eligible offender and is requesting DNA testing, the rejection is a final appealable order, and the offender may appeal it to the court of appeals of the district in which is located that court of common pleas.
*178 {¶ 54} The difficulty for me with this statute is that the denial of postconviction DNA testing by the common pleas court is not a judgment sentencing a defendant to death. Our jurisdiction in death-penalty cases is established in the Ohio Constitution, and the General Assembly cannot enlarge, modify, or diminish it. See ProgressOhio.org v. Kasich, 129 Ohio St.3d 449, 2011-Ohio-4101, 953 N.E.2d 329, at ¶ 3, quoting Smith v. State, 289 N.C. 303, 328, 222 S.E.2d 412 (1976) (“ ‘It is a well-established principle of constitutional law that when the jurisdiction of a particular court is constitutionally defined, the legislature cannot by statute restrict or enlarge that jurisdiction unless authorized to do so by the constitution’ ”). The state concedes in its supplemental brief that “the Davis Court’s narrow interpretation of the appellate jurisdiction provided in Sections 2(B)(2)(c) and 3(B)(2), Article IV of the Ohio Constitution renders R.C. 2953.73(E)(1), unconstitutional.”
{¶ 55} The majority takes issue with this view of Davis, asserting that it is R.C. 2953.02 — not the Constitution — that “limits the jurisdiction of the Supreme Court to the appeal of a judgment sentencing a defendant to death.” Davis, 131 Ohio St.3d 1, 2011-Ohio-5028, 959 N.E.2d 516, at ¶ 15. However, the problem with this assertion is that the legislature lacks authority to limit our jurisdiction when it has been expressly established by the Constitution. The majority also makes much of this dissent’s reference to ¶ 15 of Davis, which begins with the phrase “[t]he foregoing language.” Notably, that phrase is preceded by two paragraphs of quoted material, one referring to Article IV, Sections 2(B)(2)(c) and 3(B)(2) of the Ohio Constitution and the other to R.C. 2953.02. Hence, the phrase necessarily refers to each provision.
{¶ 56} The majority’s author, who also authored Davis, now suggests that the language in Davis meant that R.C. 2953.02 unconstitutionally limits our jurisdiction. Majority opinion at ¶ 17. No such language appears in Davis, and in fact the court applied the constitutional amendments and the statute in harmony. See Davis at ¶ 22. The majority’s reasoning is, in any case, unpersuasive, because it is premised on the mistaken belief that R.C. 2953.02 “does not mirror the language of the constitution.” Majority opinion at ¶ 17. A comparison of these two provisions, however, reveals no material differences. Article IV, Section 2(B)(2)(c) of the Ohio Constitution states, “The supreme court shall have appellate jurisdiction as follows: * * * In direct appeals from the courts of common pleas or other courts of record inferior to the court of appeals as a matter of right in cases in which the death penalty has been imposed.” (Emphasis added.) R.C. 2953.02 similarly provides, “In a capital case in which a sentence of death is imposed for an offense committed on or after January 1, 1995, the judgment or final order may be appealed from the trial court directly to the Supreme Court as *179 a matter of right.” (Emphasis added.) Both provisions apply to cases in which the death penalty has been imposed. Although the majority concedes that “the statute appears to limit our review solely to the actual judgment entry imposing death rather than to all final orders or judgment entries in capital cases,” majority opinion at ¶ 17, it fails to recognize that because there are no substantive differences between the statutory and constitutional language, both necessarily have the same meaning.
{¶ 57} The majority also erroneously maintains that language in Davis stating that our jurisdiction is limited in these circumstances is dicta. But setting forth the limits of our jurisdiction in death-penalty cases was necessary to resolve a legal issue framed by the court: “whether the constitutional requirement that we review all direct appeals of cases in which the death penalty was imposed includes review of appeals from a trial court’s order denying a defendant’s motion for a new trial.” Davis at ¶ 16. Notably, the court explained that “[w]e see no reason why the courts of appeals may not currently entertain all appeals from the denial of postjudgment motions in which the death penalty was previously imposed.” (Emphasis added.) Id. at ¶ 22. The conclusion in Davis that the courts of appeals may “entertain all appeals from the denial of postjudgment motions” follows from the holding that the jurisdiction of this court is limited in death-penalty cases to direct appeals of the sentence. Rather than being dicta, this holding is essential to the resolution of the case.
{¶ 58} The majority then falls back on the assertion that this interpretation is “not consistent with the intent behind the amendments to the Ohio Constitution.” Majority opinion at ¶ 19. Yet in Davis, the author of today’s majority opinion expressly relied on the intent of the electorate and the policy of accelerating review of capital cases in deciding that the courts of appeals do have jurisdiction over appeals from the denial of postjudgment motions in death-penalty cases. Notably, the court reasoned in Davis that “[a] holding that the Supreme Court has exclusive jurisdiction over all matters relating to a death-penalty case would be contrary to the language of the constitutional amendments and the statute and would have the effect of delaying the review of future cases, a scenario that the voters expressly rejected in passing the constitutional amendments.” (Emphasis sic.) Davis, 131 Ohio St.3d 1, 2011-Ohio-5028, 959 N.E.2d 516, at ¶ 22.
{¶ 59} In addition, R.C. 2953.73(E)(1) purports to vest this court with discretion to accept or deny the direct appeal from a denial of postconviction DNA testing, stating that the offender “may seek leave of the supreme court to appeal the rejection to the supreme court.” Article IV, Section 2(B)(2)(c) of the Ohio Constitution, however, provides that the appeal from the common pleas court to this court in death-penalty cases is “as a matter of right.” And because the General Assembly cannot enlarge, modify, or diminish our jurisdiction in death- *180 penalty cases, it necessarily lacks authority to grant this court discretion to deny an appeal that the Ohio Constitution allows as of right.
{¶ 60} R.C. 2953.73(E) also raises significant concerns regarding due process and equal protection in that it divides offenders who are similarly situated into two different classes: offenders who have been sentenced to death may seek leave to appeal the denial of postconviction DNA testing directly to this court while all other offenders may appeal as of right to the court of appeals and then seek discretionary review in this court if the appellate court affirms denial of the testing. Thus, the General Assembly has denied offenders sentenced to death— and only those offenders — an appeal as of right from the denial of postconviction DNA testing.
{¶ 61} As the Supreme Court observed in California v. Ramos, 463 U.S. 992, 998-999, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983), “the qualitative difference of death from all other punishments requires a correspondingly greater degree of scrutiny of the capital sentencing determination.” Thus, I would assert that those sentenced to death should receive at least the same procedural protections afforded to all other offenders.
{¶ 62} The majority’s citation of State v. Smith, 80 Ohio St.3d 89, 684 N.E.2d 668 (1997), for the proposition that R.C. 2953.73(E)(1) does not violate either due process or equal protection requires little response; aside from the fact that this statute had not been enacted at the time we decided Smith, that case did not consider a situation in which a statute creates two classes of similarly situated offenders and gives one, but not the other, an appeal as of right from the denial of DNA testing. Smith simply has no application in this regard.
{¶ 63} After today’s decision, every postconviction judgment entered in cases in which the death penalty is imposed is potentially subject to a direct appeal to this court, notwithstanding Davis. But we are not an error-correcting court; rather, our role as the court of last resort is to clarify confusing constitutional questions, resolve uncertainties in the law, and address issues of public or great general interest. The duty to review error allegedly occurring in postconviction proceedings in death-penalty cases, in my view, belongs in the first instance to the appellate courts of this state. Significantly, appellate courts consider assignments of error, while this court considers propositions of law. The two are materially and substantively different.
Conclusion
{¶ 64} The Ohio Constitution, Article IV, Section 2(B)(2)(c) establishes the appellate jurisdiction of this court “[i]n direct appeals from the courts of common pleas * * * as a matter of right in cases in which the death penalty has been imposed.” R.C. 2953.73(E) purports to enlarge the constitutionally defined *181 jurisdiction of this court, and because the legislature lacks authority to amend the Constitution, I would hold that this statute is unconstitutional.
Victor V. Vigluicci, Portage County Prosecuting Attorney, and Pamela J. Holder, Assistant Prosecuting Attorney, for appellee.
Ohio Innocence Project, Mark A. Godsey, and Carrie Wood; and Timothy Young, Ohio Public Defender, and Jennifer A. Prillo, Assistant Public Defender, for appellant.
French, J., concurs in the foregoing opinion.